```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF VERMONT

MICHAEL SHARKEY                  :
and LORETTA SHARKEY,             :
         Plaintiffs              :
                                 :
     v.                          :      File No. 1:05-CV-129
                                 :
MUTUAL OF OMAHA INSURANCE        :
COMPANY,                         :
         Defendants              :
_____:
```

RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT
(Papers 36, 46, 63 and 65)

The plaintiffs, Michael and Loretta Sharkey, allege defendant Mutual of Omaha Insurance Company breached their insurance contract, or is otherwise estopped from denying coverage, for bills they incurred as a result of Mr. Sharkey's 2002 hospitalization to treat a life-threatening staph infection. Both parties have filed cross motions for summary judgment. For the reasons set forth below, the plaintiffs' motions are DENIED, and the defendant's motions are GRANTED.

I. Background

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See, e.g., Atlantic Mut. Ins. Co. v. CSX Lines, LLC, 432 F.3d 428, 433 (2d Cir. 2005). The burden is on the moving party to

demonstrate there is no material fact genuinely in dispute.  See Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004).

The Court's role when considering a motion for summary judgment is to determine whether, in light of the applicable law, there are genuine, unresolved issues of material fact to be tried.  See, e.g., Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004).  When ruling, the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party.  See Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005).  Only disputes over material facts which might affect the outcome of the suit under the governing law preclude the entry of summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Upon review of the undisputed record, the Court finds the following.  Mutual of Omaha issued a medical insurance policy covering both plaintiffs, effective February 1, 2000 (hereinafter "the policy").  Aside from changes in premiums and deductibles, that policy was otherwise unchanged until July 31, 2002, the date plaintiffs cancelled the policy.  At no time did Mr. Sharkey, the policy's initial purchaser, ever review the policy's coverage limits.  See Michael Sharkey Depo. (appended to Paper 50 as Exh. A) at 24 (indicating he never reviewed the Mutual of Omaha policy after he obtained it in February 2000).

The policy provided the plaintiffs defined health insurance benefits.  In relevant part, the policy states:

> CALENDAR YEAR MAXIMUM.  The Calendar Year Maximum shown on the Schedule is the amount of benefits payable for Covered Services and Supplies for each insured person during a calendar year.  Expense incurred in excess of this Calendar Year Maximum will not be considered Covered Services and Supplies and will not apply to the lifetime Maximum Benefit, or to the Deductible for any year.

See Policy (appended to various documents, including Papers 5, 38, and 64) at 4, Part G.  In turn, the accompanying Policy Schedule identifies as the annual benefit: "CALENDAR YEAR MAXIMUM $250,000."  See Statement of Undisputed Material Facts (Paper 38) at Ex. 1.  At the time, Mutual of Omaha only sold policies with a $250,000 annual cap, and that provision was approved by the Vermont Department of Banking, Insurance, Securities and Health Care Administration (hereinafter "BISHCA").  See Paper 38 at Ex. 8 ("it appears that Mutual of Omaha is appropriately applying the benefit limit").

In January and February 2002, Loretta Sharkey incurred certain mental health expenses.  Because she had not obtained preauthorization as required under the policy, Mutual of Omaha denied her benefits claim.  As a result, on March 6, 2002, Mrs. Sharkey filed an administrative complaint with BISHCA.  See Paper 38 at Ex. 3.

As part of its investigation of Mrs. Sharkey's complaint, BISHCA asked Mutual of Omaha for "[c]opies of all other pertinent documentation; including applicable insurance policies." See Paper 38 at Ex. 4.  In response, on March 19, 2002, the defendant sent BISHCA a package of materials relating to the policy.

According to the defendant, a computer error caused numerous mistakes in the Schedule of Benefits provided BISHCA.  See, e.g., Paper 38 at para. 9.  Among the omissions was mention of the $250,000 annual limit.  See generally Paper 37 at 10 (listing multiple omissions in Schedule of Benefits page sent to the State).

In April 2002, Mr. Sharkey became ill as a result of a virulent staph infection.  As a result of growing costs associated with Mr. Sharkey's illness and his lengthy hospitalization, on or about May 14, 2002, Mrs. Sharkey first thought to examine the policy's payment limits.  See Loretta Sharkey Depo. (appended to Paper 38 as Ex. 6) at 28.  The only document she reviewed was the error-filed computer generated document which Mutual of Omaha had provided BISHCA in conjunction with her mental health benefits complaint filed several months before.  See Loretta Sharkey Depo. at 12 ("I had the policy that was sent to me with a complaint, sent to me with Mutual of Omaha, that they had sent to BISHCA, with my complaint.").  As noted,

that version of the policy erroneously contained no mention of the $250,000 annual limit.

After Mr. Sharkey's discharge from the hospital, on or about July 27, 2002, Mrs. Sharkey received a letter from Mutual of Omaha informing her that the policy's $250,000 annual cap had been reached with respect to Mr. Sharkey.  <u>See</u> Loretta Sharkey Depo. at 22.  After receiving that notification, Mrs. Sharkey cancelled the Mutual of Omaha policy and obtained a substitute policy from Blue Cross/Blue Shield effective August 1, 2002.

It is undisputed that Mutual of Omaha, on behalf of Mr. Sharkey, paid $250,000 in benefits in calendar year 2002. Nevertheless, Mrs. Sharkey filed a second complaint with BISHCA concerning the $250,000 annual per-person cap.

On September 18, 2002, BISHCA determined that Mrs. Sharkey was "not aware that the policy had a calendar year benefit maximum of $250,000.000" because, <u>inter alia</u>, that "calendar year maximum was not reflected on a policy schedule sent to [her] by Mutual of Omaha when [she] increased [the policy] deductible from $3,500.00 to $5,000.00."  Nevertheless, the agency ruled, it is "[t]he insurance policy, rather than the policy schedule" which governs coverage, and Mutual of Omaha appropriately applied the limit as set forth in the policy itself.  <u>See</u> Paper 38 at Exh. 7; <u>but see</u> Paper 50 at Exh. H (schedule of benefits prepared for Loretta Sharkey on August 22, 2002 does show "CALENDAR YEAR

5

MAXIMIM [sic] $250,000.00"); see also Davis v. Liberty Mut. Ins. Co., 19 F. Supp. 2d 193, 200 (D. Vt. 1998) ("Decisions made by an administrative agency are entitled to respect as to matters within its particular area of expertise."), aff'd, 267 F.3d 124 (2d Cir. 2001).

## II. Discussion

### A. Breach of Contract

Under Vermont law, "[c]onstruction of the language of insurance contracts is a question of law, not of fact." Fireman's Fund Ins. Co. v. CNA Ins. Co., 177 Vt. 215, 220 (2004). Contractual terms are afforded their plain, ordinary, and popular meaning and interpreted according to the parties' intent as expressed by the policy's language. Id.

"Insurance policies and their endorsements must be read together as one document" so that the policy may be given its full effect. Id. at 224. While ambiguities are resolved in an insured's favor, a court may "not deprive the insurer of unambiguous terms placed in the contract for its benefit." Id. at 220.

Here, the parties intended to establish a yearly cap on coverage, as evidenced by the clear policy terms. Read together, the insurance contract and policy schedule establish a $250,000 maximum yearly benefit for each named insured.

The plaintiffs argue they never received a copy of the policy from the defendant.  See, e.g., Aff. of Loretta Sharkey (Paper 49) at para. 6.  According to the plaintiffs, "[i]t was later discovered that a copy of the policy was at the office of the Eilers Insurance Agency [their insurance agent] in Waitsfield, which, like Mutual, had not forwarded a copy to the Sharkeys."  Paper 48 at 5-6.

At his deposition, the plaintiff's insurance agent, Craig Eilers, testified that after he submitted Mr. Sharkey's first application for insurance in 2000, he did receive the policy and schedule forms from Mutual of Omaha and forwarded them to the Sharkeys.  See Eilers Depo. (appended to Paper 55 as Exh. B) at 21-24 and 43-44.  As a general matter, courts have held "that the delivery or non-delivery of the policy and exclusions is irrelevant to the policy's validity and enforceability."  Terra Nova Ins. Co., Ltd. v. Nanticoke Pines, Ltd., 743 F. Supp. 293, 295 (D. Del. 1990).  Furthermore, delivery to plaintiffs' insurance agent constituted effective delivery of the policy to the plaintiffs.  See, e.g., State v. Poutre, 154 Vt. 531, 536-37 (1990).  Here, even crediting the plaintiffs' claim of personal non-receipt, that fact cannot alter the clear terms of the parties' contract.

## B. Estoppel

The gravamen of the plaintiffs' equitable argument is that "Mutual of Omaha is estopped from asserting basic coverage/rider benefits/policy adjustments different from those identified on the Schedule of Benefits . . . submitted to [BISHCA]" in conjunction with Mrs. Sharkey's second administrative complaint. Paper 46 at para. 1a.

"The purpose of the doctrine of equitable estoppel is to forbid one to speak against his own act, representations or commitments to the injury of one to whom they were directed and who reasonably relied thereon." Campbell Inns, Inc. v. Banholzer, Turnure & Co., Inc., 148 Vt. 1, 7 (1987) (citations and quotations omitted). The doctrine seeks to promote fair dealing by preventing one party from asserting rights which are inconsistent with earlier representations upon which another relied. See Beecher v. Stratton Corp., 170 Vt. 137, 139 (1999).

To establish entitlement to such equitable relief, the plaintiffs bear the burden of establishing:

> first, the party to be estopped must know the facts; second, the party being estopped must intend that his conduct shall be acted upon or the acts must be such that the party asserting the estoppel has a right to believe it so intended; third, the latter must be ignorant of the true facts; and finally, the party asserting the estoppel must rely on the conduct of the party to be estopped to his detriment.

Id. at 140; accord Travelers Ins. Co. v. Bailey, 124 Vt. 114, 116 (1964) (the party seeking contract reformation bears burden of

8

establishing "the true agreement to which the contract in question is to be reformed").

In this case, the plaintiffs' problems with asserting equitable estoppel are manifold.  First, Mutual of Omaha's mistake-filled documentation was presented to BISHCA for the agency's reliance, not to the plaintiffs.  Second, these documents were provided in conjunction with a dispute over mental health coverage; they were not provided to resolve a dispute over the yearly coverage cap.  Third, the plaintiffs admittedly never reviewed the policy's provisions, and if they had, they would have discovered the yearly cap.  See Fisher v. Poole, 142 Vt. 162, 169 (1982) ("one whose own omissions or inadvertences contributed to the problem" cannot invoke estoppel).  Finally, these erroneous documents were not provided to the plaintiffs to induce them to buy health insurance coverage, and in fact were produced years after the issuance of the policy; therefore, the plaintiffs could not have reasonably relied upon them when they purchased the policy.  See Bradley v. Marshall, 129 Vt. 635, 639 (1971) (it is "essential" to establish reliance on defendant's conduct to one's prejudice).  The plaintiffs' equitable estoppel claim is without merit.  Cf. K. J. Quinn & Co. v. Continental Cas. 806 F. Supp. 1037, 1045 (D.N.H. 1992) ("Even if the legal elements of waiver and estoppel could be satisfied, the law is clear that waiver and estoppel cannot serve as a basis for

expanding coverage to include risks for which coverage was never intended.").

## C. Bad Faith

Finally, the plaintiffs allege the defendant exhibited bad faith because it had no reasonable basis to deny its claim for benefits.  See Paper 65.  Having determined the company properly denied benefits in excess of the $250,000 Calendar Year Maximum, the Court finds no basis for determining Mutual of Omaha acted in bad faith in this case.  See Lauzon v. State Farm Mut. Auto Ins. Co., 164 Vt. 620, 621 (1995); Bushey v. Allstate Ins. Co., 164 Vt. 399, 403 (1995).

## III. Conclusion

The defendant's Motions for Summary Judgment (Papers 36 and 63) are GRANTED.  The plaintiffs' Motions for Summary Judgment (Papers 46 and 65) are DENIED.

SO ORDERED.

Dated at Brattleboro, Vermont, this 1st day of August, 2007.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge